## <u>SETTLEMENT AGREEMENT</u>

This Settlement Agreement ("Agreement") is entered into among the United States of America, acting through the United States Department of Justice and on behalf of the United States Department of the Treasury (collectively, the "United States"), Nan McKay and Associates ("NMA"), and Elevation 33, LLC ("Relator"). Collectively, all of the above will be referred to as "the Parties."

<u>RECITALS</u>

NMA admits, acknowledges, and accepts responsibility for the facts set forth below, in Paragraphs A through J.

A.      NMA, is a company based in El Cajon, California, that provides consulting, operations, and training services for municipal and state governmental agencies engaged in various housing related programs.

B.      Guidehouse is a company based in McLean, Virginia, that provides consulting services to public and private entities in management, technology, risk consulting, business process outsourcing, and digital services.

C.      In 2021, as part of its COVID-19 relief funding, Congress established two emergency rental assistance programs under the Consolidated Appropriations Act of 2021 and the American Rescue Plan Act of 2021 to provide financial assistance to eligible low-income households to cover the costs of rent, rental arrears, utilities, and other housing-related expenses. Funds from these programs were provided to states, U.S. territories, and certain local and tribal governments. Participating governments were to set up programs to distribute the funding to eligible tenants and landlords.

D.      In April 2021, New York State (the "State") authorized the establishment of its Emergency Rental Assistance Program ("ERAP"). New York State's Office of Temporary and

Disability Assistance ("OTDA") was designated as the state agency responsible for administering the State's ERAP.

     E.     Initially, the State anticipated that NMA would be the ERAP prime contractor. Following discussions between NMA and OTDA, Guidehouse was designated as the prime contractor for the ERAP program, with NMA acting as a subcontractor. Accordingly, on May 3, 2021, Guidehouse executed an agreement with OTDA ("ERAP Prime Contract") under which it would act as the prime contractor with ultimate responsibility for the ERAP program, including for the technology and services provided to the State. NMA, in turn, served as the subcontractor to Guidehouse responsible for delivering and maintaining the technology product used by New York residents to fill out and submit forms requesting financial assistance under the ERAP ("ERAP Application").

Pre-Go-Live Cybersecurity Testing and the June 1, 2021 "Information Security Breach"

     F.     The ERAP Prime Contract required Guidehouse to perform certain cybersecurity testing on the ERAP Application, including tests and scans in accordance with industry standard practices. Specifically, the contract and various State information security policies incorporated therein required that certain cybersecurity testing and scanning occur while the ERAP Application was in the "pre-production environments," meaning prior to the launch of the ERAP Application to the public. Since NMA was the subcontractor responsible for delivering and maintaining the ERAP Application, Guidehouse included those cybersecurity requirements in its subcontract with NMA but expressly retained the right to perform its own application and webserver testing and scanning as appropriate.

     G.     On or about May 28, 2021, NMA informed Guidehouse that it was having difficulty with one of its cybersecurity testing tools and, thus, it would be unlikely to complete

Settlement Agreement: *United States ex rel. Elevation 33, LLC v. Guidehouse Inc., and Nan McKay and Associates, Inc*., Case No. 1:22-cv-206 (N.D.N.Y.)

the required pre-production cybersecurity testing of the ERAP Application prior to the ERAP Application's scheduled go-live date.  As a result, shortly thereafter, Guidehouse notified NMA that Guidehouse would assume pre-production testing duties and conduct the pre-go-live cybersecurity testing of the ERAP Application.  Guidehouse, using a different testing tool, could not get it to timely work either and ultimately, neither Guidehouse nor NMA satisfied their obligation to complete the required pre-production cybersecurity testing.

      H.      The State's ERAP went live as planned on June 1, 2021, 9:00 a.m.  (EST), without Guidehouse or NMA conducting the required pre-go-live cybersecurity testing. Approximately 12 hours after go-live, OTDA notified both Guidehouse and NMA of an incident whereby certain data from the ERAP was appearing on the Internet.  Although an investigation conducted by a third party retained by NMA in consultation with Guidehouse determined that no Personally Identifiable Information ("PII") was *viewed or used* by unauthorized parties, the "Information Security Breach" protocol was triggered under the ERAP Prime Contract because PII was *accessed* by commercial search engines for a limited group of individuals.

      I.      Upon discovery of the "Information Security Breach," the ERAP Application was taken off-line overnight while the parties worked to identify program vulnerabilities that may have led to that incident.

      J.      Had Guidehouse or NMA conducted the contractually-required pre-go-live cybersecurity testing, it is possible that the conditions that allowed for the "Information Security Breach" to have occurred may have been detected and, thus, the incident prevented.

      K.      The United States contends that it has certain civil claims against NMA for its knowing failure to conduct the requisite pre-go-live cybersecurity testing, in violation of the

Settlement Agreement:  *United States ex rel. Elevation 33, LLC v. Guidehouse Inc., and Nan McKay and Associates, Inc*., Case No. 1:22-cv-206 (N.D.N.Y.)

cybersecurity requirements incorporated in the ERAP Prime Contract, as described in Paragraphs C through J. That conduct is referred to below as the "Covered Conduct."

L.      On March 4, 2022, Elevation 33, LLC filed a qui tam action in the United States District Court for the Northern District of New York captioned *United States ex rel. Elevation 33, LLC v. Guidehouse Inc. and Nan McKay and Associates, Inc.*, Case No. 1:22-cv-206 (N.D.N.Y.), pursuant to the qui tam provisions of the False Claims Act, 31 U.S.C. § 3730(b) (the Civil Action). Concurrent with this Agreement, the United States is intervening in the Civil Action.

M.      Relator claims entitlement under 31 U.S.C. § 3730(d) to a share of the proceeds of this Settlement Agreement and to Relator's reasonable expenses, attorneys' fees and costs.

N.      This Settlement Agreement is neither an admission of liability by NMA nor a concession by the United States that its claims are not well founded.

To avoid the delay, uncertainty, inconvenience, and expense of protracted litigation of the above claims, and in consideration of the mutual promises and obligations of this Settlement Agreement, the Parties agree and covenant as follows:

<u>TERMS AND CONDITIONS</u>

1.      Upon final execution of this Settlement Agreement by the parties, NMA shall pay to the United States $3,700,000 (Settlement Amount), of which $1,125,000 is restitution, by electronic funds transfer pursuant to written instructions to be provided by the United States Attorney's Office for the Northern District of New York. Payment shall be made no later than May 21, 2024.

4

Settlement Agreement: *United States ex rel. Elevation 33, LLC v. Guidehouse Inc., and Nan McKay and Associates, Inc*., Case No. 1:22-cv-206 (N.D.N.Y.)

2.      Conditioned upon the United States receiving the Settlement Amount and as soon as feasible after receipt, the United States shall pay $638,250 to Relator by electronic funds transfer (Relator's Share).

3.      NMA's payment, if any, to Relators for reasonable expenses, attorneys' fees and costs pursuant to 31 U.S.C. 3730(d)(2) shall be addressed separately from this Agreement pursuant to a negotiation process agreed to by NMA and the Relator.

4.      Subject to the exceptions in Paragraph 6 (concerning reserved claims) below, and upon the United States' receipt of the Settlement Amount, the United States releases NMA from any civil or administrative monetary claim the United States has for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733; the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812; or the common law theories of breach of contract, payment by mistake, unjust enrichment, and fraud.

5.      Subject to the exceptions in Paragraph 6 below, and upon the United States' receipt of the Settlement Amount, Relator, on behalf of itself and any current, past, or future member, heir, successor, attorney, agent, or assign, releases NMA from any civil monetary claim the Relator has on behalf of the United States for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733.

6.      Notwithstanding the releases given in Paragraph 4 of this Agreement, or any other term of this Agreement, the following claims and rights of the United States are specifically reserved and are not released:

        a.      Any liability arising under Title 26, U.S. Code (Internal Revenue Code);

        b.      Any criminal liability;

Settlement Agreement:  *United States ex rel. Elevation 33, LLC v. Guidehouse Inc., and Nan McKay and Associates, Inc*., Case No. 1:22-cv-206 (N.D.N.Y.)

c.      Except as explicitly stated in the Agreement, any administrative liability or enforcement right, or any administrative remedy, including the suspension and debarment rights of any federal agency;

d.      Any liability to the United States (or its agencies) for any conduct other than the Covered Conduct;

e.      Any liability based upon obligations created by this Agreement;

f.      Any liability of individuals;

g.      Any liability for express or implied warranty claims or other claims for defective or deficient products or services, including quality of goods and services; and

h.      Any liability for personal injury or property damage or for other consequential damages arising from the Covered Conduct.

7.      Relator, on behalf of itself and any current, past, or future member, heir, successor, attorney, agent, or assign, shall not object to this Agreement but agrees and confirms that this Agreement is fair, adequate, and reasonable under all the circumstances, pursuant to 31 U.S.C. § 3730(c)(2)(B).  Conditioned upon Relator's receipt of the Relator's Share, Relator, on behalf of itself and any current, past, or future member, heir, successor, attorney, agent, or assign, fully and finally release, waive, and forever discharge the United States, its agencies, officers, agents, employees, and servants, from any claims arising from the filing of the Civil Action or under 31 U.S.C. § 3730, and from any claims to a share of the proceeds of this Agreement and/or the Civil Action.

8.      Relator, on behalf of itself and any current, past, or future member, heir, successor, attorney, agent, or assign releases NMA, and its officers, agents, and employees, from

any liability to Relator arising from the filing of the Civil Action, except for under 31 U.S.C. § 3730(d) for expenses or attorneys' fees and costs.

9.      NMA waives and shall not assert any defenses NMA may have to any criminal prosecution or administrative action relating to the Covered Conduct that may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution, this Agreement bars a remedy sought in such criminal prosecution or administrative action.

10.      NMA fully and finally releases the United States, its agencies, officers, agents, employees, and servants, from any claims (including attorneys' fees, costs, and expenses of every kind and however denominated) that NMA has asserted, could have asserted, or may assert in the future against the United States, its agencies, officers, agents, employees, and servants, related to the Covered Conduct or the United States' investigation or prosecution thereof.

11.      NMA fully and finally releases the Relator, as well as itself and any current, past, or future member, heir, successor, attorney, agent, or assign, from any claims (including attorneys' fees, costs, and expenses of every kind and however denominated) that NMA has asserted, could have asserted, or may assert in the future against the Relator, as well as itself and any current, past, or future member, heir, successor, attorney, agent, or assign, related to the Covered Conduct and the Relator's investigation and prosecution thereof.

12.      a.      Unallowable Costs Defined: All costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47) incurred by or on behalf of NMA, and its present or former officers, directors, employees, shareholders, and agents in connection with:

(1)      the matters covered by this Agreement;

7

Settlement Agreement:  *United States ex rel. Elevation 33, LLC v. Guidehouse Inc., and Nan McKay and Associates, Inc*., Case No. 1:22-cv-206 (N.D.N.Y.)

(2)     the United States' audit(s) and any investigation(s) of the matters

covered by this Agreement;

(3)     NMA's investigation, defense, and corrective actions undertaken

in response to the United States' audit(s) and any investigation(s)

in connection with the matters covered by this Agreement

(including attorneys' fees);

(4)     the negotiation and performance of this Agreement;

(5)     the payment NMA makes to the United States pursuant to this

Agreement and any payments that NMA may make to Relator,

including costs and attorneys fees,

are unallowable costs for government contracting purposes (hereinafter referred to as

Unallowable Costs).

b.     Future Treatment of Unallowable Costs: Unallowable Costs will be

separately determined and accounted for by NMA, and NMA shall not charge such Unallowable

Costs directly or indirectly to any contract with the United States.

c.     Treatment of Unallowable Costs Previously Submitted for Payment:

Within 90 days of the Effective Date of this Agreement, NMA shall identify and repay by

adjustment to future claims for payment or otherwise any Unallowable Costs included in

payments previously sought by NMA or any of its subsidiaries or affiliates from the United

States.  NMA agrees that the United States, at a minimum, shall be entitled to recoup from NMA

any overpayment plus applicable interest and penalties as a result of the inclusion of such

Unallowable Costs on previously-submitted requests for payment.  The United States, including

the Department of Justice and/or the affected agencies, reserves its rights to audit, examine, or

re-examine NMA's books and records and to disagree with any calculations submitted by NMA or any of its subsidiaries or affiliates regarding any Unallowable Costs included in payments previously sought by NMA, or the effect of any such Unallowable Costs on the amount of such payments.

13.    This Agreement is intended to be for the benefit of the Parties only.

14.    Upon receipt of the payment described in Paragraph 1, above, the Parties shall promptly sign and file in the Civil Action a Joint Stipulation of Dismissal of claims against NMA in the Civil Action pursuant to Rule 41(a)(1).  The Joint Stipulation shall be (i) with prejudice as to the United States' and the Relator's claims as to the Covered Conduct, and (ii) without prejudice as to the United States and with prejudice as to the Relator as to all other allegations against NMA set forth in the Civil Action, except with respect to Relator's claim against Defendants for reasonable expenses necessarily incurred and reasonable attorneys' fees and costs pursuant to 31 U.S.C. § 3730(d), which shall not be dismissed and shall remain pending.

15.    Each Party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement.

16.    Each Party and signatory to this Agreement represents that it freely and voluntarily enters into this Agreement without any degree of duress or compulsion.

17.    This Agreement is governed by the laws of the United States.  The exclusive jurisdiction and venue for any dispute relating to this Agreement is the United States District Court for the Northern District of New York.  For purposes of construing this Agreement, this Agreement shall be deemed to have been drafted by all Parties to this Agreement and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

Settlement Agreement:  *United States ex rel. Elevation 33, LLC v. Guidehouse Inc., and Nan McKay and Associates, Inc.*, Case No. 1:22-cv-206 (N.D.N.Y.)

18.     This Agreement constitutes the complete agreement between the Parties.  This Agreement may not be amended except by written consent of the Parties.

19.     The undersigned counsel represent and warrant that they are fully authorized to execute this Agreement on behalf of the persons and entities indicated below.

20.     This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.

21.     This Agreement is binding on NMA's successors, transferees, heirs, and assigns.

22.     This Agreement is binding on Relator's successors, transferees, heirs, and assigns.

23.     All parties consent to the United States', the Relator's, and NMA's disclosure of this Agreement, and information about this Agreement, to the public.

24.     This Agreement is effective on the date of signature of the last signatory to the Agreement (Effective Date of this Agreement).  Facsimiles of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

Settlement Agreement:  *United States ex rel. Elevation 33, LLC v. Guidehouse Inc., and Nan McKay and Associates, Inc*., Case No. 1:22-cv-206 (N.D.N.Y.)

**FOR THE UNITED STATES OF AMERICA**

May 13, 2024

J. Jennifer Koh
Trial Attorney
Commercial Litigation Branch
Civil Division
United States Department of Justice

Carla B. Freedman
United States Attorney
Northern District of New York

May 13, 2024

Adam J. Katz
Assistant United States Attorney


**FOR THE DEFENDANT**

May ___, 2024

Richard L Green
Gordon Rees Scully Mansukhani, LLP


May ___, 2024

Thomas Finn
McCarter & English, LLP


May ___, 2024

John McKay
NMA, Chief Executive Officer


11

**FOR THE UNITED STATES OF AMERICA**

May ___, 2024

_____

J. Jennifer Koh
Trial Attorney
Commercial Litigation Branch
Civil Division
United States Department of Justice

Carla B. Freedman
United States Attorney
Northern District of New York

May ___, 2024

_____

Adam J. Katz
Assistant United States Attorney

**FOR THE DEFENDANT**

May 13 , 2024

_____

Richard L Green
Gordon Rees Scully Mansukhani, LLP

May 13 , 2024

_____

Thomas Finn
McCarter & English, LLP

May 13 , 2024

_____

John McKay
NMA, Chief Executive Officer

Settlement Agreement:  *United States ex rel. Elevation 33, LLC v. Guidehouse Inc., and Nan McKay and Associates, Inc.*, Case No. 1:22-cv-206 (N.D.N.Y.)

**FOR THE RELATOR**

May  13 , 2024

*Sam Buffone*
_____
Sam Buffone
Buffone Law Group

May  13 , 2024

*Kyle Reinhardt*
_____
Kyle Reinhardt
Sole Member, Elevation 33, LLC

Settlement Agreement:  *United States ex rel. Elevation 33, LLC v. Guidehouse Inc., and Nan McKay and Associates, Inc*., Case No. 1:22-cv-206 (N.D.N.Y.)

Doc ID: 7afe1e1a5326fa190aa3d0cd3c85119f62cd4659